IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

DARLA EARP,                              )
                                         )
           Plaintiff,                    )
                                         )
vs.                                      )   Case No. CIV-14-1195-D
                                         )
EUCALYPTUS REAL ESTATE, LLC,             )
DOVER GROUP, LLC, and                    )
CONSOLIDATED CAPITAL                     )
INVESTMENTS, LLC,                        )
                                         )
           Defendants                    )

# ORDER

Before the Court is Defendants' Motion to Dismiss [Doc. No. 4], filed pursuant to Fed. R. Civ. P. 12(b)(6). Plaintiff has responded in opposition to the Motion, which is fully briefed.

Plaintiff brings suit against her former employer or joint employers to remedy alleged violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*. She also claims Defendants failed to pay her and other similarly situated employees overtime wages required by the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*. In addition, Plaintiff asserts a pendent state law claim for intentional infliction of emotional distress based on events during her employment. Defendants move to dismiss the Complaint, asserting that Plaintiff's factual allegations are insufficient to state a plausible claim of interference with FMLA rights, nonpayment of FLSA wages, intentional tort, or joint liability of all Defendants.

**Standard of Decision**

"To survive a motion to dismiss [under Rule 12(b)(6)], a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)); *see Robbins v. Oklahoma*, 519 F. 3d 1242, 1247 (10th Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Determining whether a complaint states a plausible claim for relief is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *See id.* at 679. Thus, for example, "[a] simple negligence action based on an automobile accident may require little more than the allegation that the defendant negligently struck the plaintiff with his car while crossing a particular highway on a specified date and time." *Robbins*, 519 F.3d at 1248. The question to be decided is "whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Lane v. Simon*, 495 F.3d 1182, 1186 (10th Cir. 2007) (internal quotation omitted).

**Plaintiff's Allegations**[1]

Defendants Dover Group, LLC and Eucalyptus Real Estate, LLC provide management and administrative services for low-income, subsidized-rent apartment complexes owned by

---

[1] As required by Rule 12(b)(6), the factual allegations of the Complaint are accepted as true and stated in the light most favorable to Plaintiff. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013).

Defendant Consolidated Capital Investments, LLC or entities owned or controlled by its principal, Lew McGinnis. Beginning in March 2013, Plaintiff was employed full-time in the position of manager, and rotated among various apartment complexes managed or owned by Defendants. Plaintiff's immediate superior was Courtney Bolt, but Plaintiff took direction from Ms. Bolt, Mr. McGinnis, Megan McGinnis, and officers or managers of all Defendants. Defendants shared the same business offices and common staff, and their officers or managing agents were individuals related by blood or marriage.

The events leading up to the termination of Plaintiff's employment began on April 30, 2014, when she was assaulted by an angry tenant who yelled profanities and attempted to hit Plaintiff in the head with a thrown object. The tenant's adult son also yelled profanities at Plaintiff. Plaintiff immediately called Ms. Bolt to report the incident and request assistance. Ms. Bolt inquired about the tenant's payment history and referred Plaintiff to Defendants' counsel, who advised Plaintiff to serve the tenant with a 24-hour eviction notice. Plaintiff promptly followed this advice, accompanied by a maintenance worker for security.

The next day the conduct of the tenant and her son escalated with threats of physical violence. Plaintiff called for police assistance, and police officers responded to the call but took no action. Defendants did not enforce the eviction notice. Plaintiff believes the tenant called the corporate office and received instructions about paying rent. After the police visit, the intimidation and threats directed at Plaintiff by the tenant and her son continued. Plaintiff reported the situation to her manager.

The next morning, the tenant was waiting for Plaintiff in the parking lot when she arrived at the property, approached Plaintiff with additional profanity and threats, followed Plaintiff to her office, and tried to kick open the office door as Plaintiff closed it. Plaintiff locked the door for her safety, but the tenant remained outside and continued to verbally threaten Plaintiff. Plaintiff called Ms. Bolt, who overheard the tenant's threats and instructed Plaintiff to call for police assistance. When Plaintiff did so, police officers came to the apartment complex and cautioned the tenant. After the police visit, the tenant and her son continued their threatening behavior, including death threats made verbally and through hand gestures in front of Plaintiff's office window. Based on information from another tenant, Plaintiff believed the tenant's son was a gang member. Plaintiff attempted unsuccessfully to contact a manager at the corporate office to report that she was frightened about her personal safety. Plaintiff finally reached Ms. McGinnis, who promised to look into the matter.

The following day the tenant came to the office to pay rent. Plaintiff called Ms. Bolt and was instructed to receive the tenant's payment. No action was taken on Plaintiff's request for eviction of the tenant, and no other assistance was provided to Plaintiff for dealing with the threatening situation, even though Plaintiff reported to Defendants that she was suffering emotionally. Defendants did not engage private security services as they had done in the past, and did not reassign Plaintiff to another property.

Plaintiff's work environment caused her to suffer emotional distress and become physically ill. On May 5, 2014, Plaintiff experienced dizziness and blurred vision at work,

4

and requested permission to leave work for treatment. Ms. McGinnis denied the request, but later that day, Ms. Bolt and Ms. McGinnis visited the property. They allegedly berated Plaintiff for not previously accepting rent from the tenant. During the meeting Plaintiff experienced shortness of breath and blurred vision. Plaintiff again requested, and this time received, permission to seek immediate medical attention. A relative drove Plaintiff to a hospital emergency room, but after a lengthy wait, Plaintiff went home without treatment.

On May 6, 2014, when Plaintiff's symptoms remained, she returned to an emergency room and was admitted to the hospital. Plaintiff advised Ms. Bolt and Ms. McGinnis of her hospitalization. Plaintiff was released from the hospital the following day with instructions not to return to work until May 12, 2014. Plaintiff advised Ms. Bolt and Ms. McGinnis of her need for leave from work, and was instructed to appear at the corporate office with a doctor's note on May 12. Plaintiff complied with this instruction, met with Ms. McGinnis on that date, and was terminated.

During her employment, Defendants classified Plaintiff's position as exempt from FLSA, and she was paid a salary biweekly. Plaintiff frequently worked in excess of 40 hours per week, but was not compensated with overtime wages. Plaintiff alleges that her position did not qualify for an exemption. She states that her job duties included manual or non-office work, that her primary duties did not involve the exercise of discretion or independent judgment on matters of significance, that her work was not directly related to management or general business operations, that she did not direct the work of two or more employees or hire and fire employees, that she recorded hours worked each week on Defendants'

5

timekeeping system, and that she did not earn at least $455 per week during some pay periods. Plaintiff makes similar allegations on behalf of similarly situated employees who may consent to join a collective action pursuant to FLSA, 29 U.S.C. § 203.

In Count I of the Complaint, Plaintiff claims under FMLA that Defendants interfered with her exercise or attempted exercise of the right to medical leave for a serious health condition and that Defendants retaliated against her for exercising the right to FMLA leave by terminating her employment, in violation of 29 U.S.C. § 2615(a). In Count II, Plaintiff asserts a claim for intentional infliction of emotional distress on the ground that Defendants' actions and omissions were outrageous and intentionally or recklessly caused her severe emotional distress. In Count III, Plaintiff claims under FLSA on behalf of herself and a collective class of similarly situated employees that Defendants failed to pay overtime wages due under 29 U.S.C. § 207(a) and that Defendants willfully violated federal law. Plaintiff seeks compensatory damages for lost wages and benefits, unpaid overtime compensation, medical expenses, and emotional distress, as well as liquidated damages, attorney fees, and costs.

In support of the Motion, Defendants contend Plaintiff's allegations are conclusory and provide insufficient facts to state an interference claim under FMLA, an overtime wage claim under FLSA, a claim of intentional infliction of emotional distress, or a basis for joint liability of multiple entities alleged to be a single employer.

**Discussion**

**A. FMLA**

    **1. Interference Claim**

The Tenth Circuit has recognized two types of FMLA claims or theories of recovery under 29 U.S.C. § 2615(a): "'an entitlement or interference theory arising from § 2615(a)(1), and a retaliation or discrimination theory arising from § 2615(a)(2).'" *Dalpiaz v. Carbon County*, 760 F.3d 1126, 1131 (10th Cir. 2014) (quoting *Metzler v. Fed. Home Loan Bank*, 464 F.3d 1164, 1170 (10th Cir. 2006)). "These two theories of recovery are separate and distinct theories that 'require different showings[,] differ with respect to the burden of proof,' and 'differ with respect to the timing of the adverse action.'" *Id.* (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)).

In challenging Plaintiff's FMLA claim, Defendants focus on an interference theory. In response, Plaintiff presents argument in support of this theory, and observes that Defendants do not address her FMLA retaliation claim. In fairness to Defendants, the Complaint cites only § 2615(a)(1) and not § 2615(a)(2). However, Count I bears conspicuous headings listing both theories, including "Retaliation for [r]equesting and taking FMLA leave." *See* Compl. [Doc. No. 1], p.12. Also, the Complaint contains allegations designed to support a retaliation or discrimination theory, such as: "Plaintiff always met or exceeded her performance expectations receiving multiple bonuses and performance raises to her salary." *Id.* ¶ 4.3. Accordingly, the Court finds that Plaintiff asserts in the Complaint

7

an FMLA retaliation claim that is not challenged by Defendants. In ruling on their Motion, the Court considers only the sufficiency of Plaintiff's pleading to state an interference claim.

The Tenth Circuit has explained this claim as follows:

> To establish a claim of FMLA interference under § 2615(a)(1), an employee must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (internal quotation marks and brackets omitted). To satisfy the second element of an interference claim – adverse action interfering with the right to take FMLA leave – "the employee must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id*. Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id*.

*Dalpiaz*, 760 F.3d at 1132 (footnote omitted). "The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave or to reinstatement following the leave, a deprivation of this right is a violation regardless of the employer's intent." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

Defendants first argue that the Complaint contains insufficient factual allegations to support the first element because Plaintiff does not allege a "serious health condition," as defined by FMLA. A "serious health condition" is "an illness, injury, impairment, or physical condition that involves – (A) inpatient care in a hospital . . . ; or (B) continuing treatment by a health care provider." *See* 29 U.S.C. § 2611(11). The Complaint plainly alleges that Plaintiff experienced an illness or physical condition that involved inpatient

8

hospital care. Thus, the Court finds that a serious health condition is sufficiently alleged, at least as of May 6, 2014.

Defendants also contend Plaintiff does not sufficiently allege an adverse action by her employer that interfered with any right to take leave. Defendants note that Plaintiff was allowed to leave work on May 5, 2014, the same day she asked to obtain medical treatment, and that she remained off work until May 12, 2014, when her medical restriction was lifted. Plaintiff does not allege that she requested additional leave prior to the termination of her employment. The only adverse action identified in Plaintiff's brief or shown by the Complaint is a denial of her request to leave work on May 5, 2014. *See* Pl.'s Resp. Br. [Doc. No. 5], p.6. Plaintiff states no facts from which to infer that this request implicated an FMLA-created right to leave, and in any event, the request was granted the same day. Further, Plaintiff's allegations do not show that any adverse employment decision was made before she was allowed to take leave or while she was on FMLA leave. Accordingly, the Court finds that the Complaint fails to state a plausible FMLA interference claim.

### 2. Definition of "Employer"

FMLA defines "employer" to include "any person who acts directly or indirectly in the interest of an employer" and "any successor in interest of an employer." *See* 29 U.S.C. § 2611(4)(A)(ii). This definition does not address when separate entities may be considered joint employers, but the Department of Labor has issued an implementing regulation that speaks to this issue. This regulation provides:

9

>Where two or more businesses exercise some control over the work or working conditions of the employee, the businesses may be joint employers under FMLA. Joint employers may be separate and distinct entities with separate owners, managers, and facilities. Where the employee performs work which simultaneously benefits two or more employers, or works for two or more employers at different times during the workweek, a joint employment relationship generally will be considered to exist in situations such as:
>
>>(1) Where there is an arrangement between employers to share an employee's services or to interchange employees;
>>
>>(2) Where one employer acts directly or indirectly in the interest of the other employer in relation to the employee; or,
>>
>>(3) Where the employers are not completely disassociated with respect to the employee's employment and may be deemed to share control of the employee, directly or indirectly, because one employer controls, is controlled by, or is under common control with the other employer.

*See* 29 C.F.R. § 825.106(a). In light of this broad definition of joint employers, the Court finds that the Complaint contains minimally sufficient factual allegations from which to infer that a joint employment relationship existed. Plaintiff alleges that Defendants shared and interchanged employees, that she was supervised by and took direction from managers of all three companies, and that she rotated among apartment complexes managed or owned by Defendants, suggesting that her work benefitted all Defendants. Viewed most favorably to Plaintiff, the Court finds that Plaintiff has sufficiently alleged a basis for Defendants to be determined to be her joint employers for purposes of FMLA liability on her retaliation claim.

**B.     FLSA Claim**

    **1.     Overtime Wage Claim**

With certain exceptions, an employer engaged in interstate commerce is required by FLSA to pay overtime compensation to an employee "for his employment in excess of [forty

hours in a workweek] at a rate not less than one and one-half times the regular rate at which he is employed." *See* 29 U.S.C. § 207(a). Defendants contend the Complaint contains insufficient factual allegations to show Plaintiff's position was not properly classified as exempt under 29 U.S.C. § 231(a)(1) because she was "employed in a bona fide executive, administrative, or professional capacity." This contention is mistaken. The burden to establish that an employee falls within an FLSA exemption lies with the employer. *See, e.g.*, *Maestas v. Day & Zimmerman, LLC*, 664 F.3d 822, 826 (10th Cir. 2012); *see also Landers v. Quality Communs., Inc.*, 771 F.3d 638, 641-46 (9th Cir. 2014) (discussing allegations necessary to state a plausible overtime wage claim). Further, the Court finds that the Complaint contains sufficient allegations to show that Plaintiff did not satisfy the regulatory definitions of an executive or administrative employee. *See* 29 C.F.R. §§ 541.100, 541.200. Therefore, the Court rejects Defendants' arguments regarding the sufficiency of the Complaint to state an FLSA claim.[2]

2. **Definition of "Employer"**

Defendants also contend that Plaintiff's allegations are insufficient to establish joint employment for purposes of FLSA. Like FMLA, the term "employer" is broadly defined to include "any person acting directly or indirectly in the interest of an employer in relation to an employee . . . ." 29 U.S.C. § 203(d). For the reasons stated above with regard to

---

[2] Defendants also make a cursory argument that the Complaint fails to sufficiently allege they were engaged in interstate commerce. This argument overlooks factual allegations that Defendants managed or owned apartment complexes in multiple states, including Oklahoma and Kansas. *See* Compl. [Doc. No. 1], ¶¶ 2.5, 4.1.

Plaintiff's FMLA claim, the Court finds that the Complaint sufficiently alleges the existence of a joint employment relationship.

C.   **Intentional Infliction of Emotional Distress**

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *see also Welton*, 49 P.3d at 735; *Kraszewski v. Baptist Medical Center of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). "In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

In this case, Defendants contend Plaintiff has failed to allege sufficient facts to suggest extreme and outrageous conduct by any of them. Plaintiff has responded in her brief with a summary of factual allegations (some of which do not appear in the Complaint) that focus on Defendants' collective failure to protect Plaintiff from the verbal and physical assaults of an angry tenant and a contention that "[h]er mangers were only interested in collecting rent

from the tenant, not [Plaintiff's] physical and emotional health." *See* Pl.s' Resp. Br. [Doc. No. 5], p.10.

Upon consideration of allegations of the Complaint, the Court finds insufficient facts to support a finding of outrageous conduct by Defendants. Accepting the factual allegations as true, Plaintiff's pleading relates, at the most, a five-day period during her employment when employees or managers of Defendants failed to assist Plaintiff in dealing with threatening behavior of a tenant and did not adequately respond to Plaintiff's complaints about fear for her personal safety. While the third-party behavior and the circumstances described in the Complaint were undoubtedly stressful for Plaintiff, the Court finds that the Complaint fails to set forth conduct of *Defendants* that could reasonably be viewed as so extreme and outrageous as to be beyond all possible bounds of decency and utterly intolerable in a civilized community.

Plaintiff's allegations are arguably analogous to those asserted in *Miner v. Mid-America Door Co.*, 68 P.3d 212 (Okla. Civ. App. 2002), in which two employees who were verbally abused and physically threatened by an alleged supervisor asserted a claim of outrage based on their employer's failure to remedy the situation in a timely manner. A summary judgment in favor of the employer was affirmed even though the appellate court disagreed with the trial court's finding that the material facts were undisputed. The appellate court found that "the company's conduct, *even if untimely and unreasonable*, was not such conduct as could reasonably be found to be 'beyond all possible bounds of decency in the setting in which it occurred' or 'utterly intolerable in a civilized community.'" *Miner v.*

*Mid-America Door Co.*, 68 P.3d at 224 (emphasis in original). Similarly here, regardless whether Defendants failed to make a timely and reasonable response to the verbal abuse and physical threats that Plaintiff endured from the angry tenant and her son, Plaintiff fails to allege conduct of Defendants that was sufficiently outrageous to hold them liable in tort.

**Conclusion**

Assessing Plaintiff's pleading under the Rule 12(b)(6) standard, the Court finds the Complaint is minimally sufficient to state an FMLA retaliation claim and an FLSA overtime wage claim against all Defendants, but not an FMLA interference claim. The Complaint also fails to state a claim upon which relief can be granted under Oklahoma tort law.

Plaintiff includes in her response brief a request that any dismissal should be without prejudice to further pleading or that she should be allowed to amend her Complaint to address any deficiency. Because the Complaint is sufficient to proceed on certain claims, the Court declines to authorize an amendment at this time. The scheduling order to be entered pursuant to Fed. R. Civ. P. 16(b)(1) will establish a deadline for motions to amend pleadings.

IT IS THEREFORE ORDERED that Defendant's Motion to Dismiss [Doc. No. 4] is GRANTED in part and DENIED in part, as set forth herein.

IT IS SO ORDERED this 9th day of July, 2015.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE