IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| DARLA EARP, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. CIV-14-1195-D |
| | ) | |
| EUCALYPTUS REAL ESTATE, LLC, | ) | |
| DOVER GROUP, LLC, and | ) | |
| CONSOLIDATED CAPITAL | ) | |
| INVESTMENTS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**O R D E R**

Before the Court are Defendants' Motion to Strike Portions of Plaintiff's Second Amended Complaint [Doc. No. 23] and Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 24]. Plaintiff has responded in opposition to the Motions, which are fully briefed. Defendants' Motions present alternative requests that certain allegations be stricken from Plaintiff's Second Amended Complaint [Doc. No. 22] and that certain claims be dismissed. Thus, the Motions are taken up together.

Plaintiff brings suit against her former employer or joint employers to remedy alleged violations of the Family and Medical Leave Act (FMLA), 29 U.S.C. § 2601 *et seq*., and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.[1] Plaintiff also asserts a pendent state law claim for intentional infliction of emotional distress. In ruling on an initial motion to dismiss, the Court determined that the Complaint failed to state a claim of interference

---

[1] Plaintiff initially asserted an FLSA claim for a collective action on behalf of a class of similarly situated employees, but Plaintiff later abandoned her class claim.

with FMLA rights or intentional tort, and dismissed those two claims. Within the deadline set by the Scheduling Order, Plaintiff filed a motion to amend the Complaint, which was granted. Plaintiff then filed an Amended Complaint and, with the Court's authorization, a Second Amended Complaint. The events leading to these amendments form the basis of Defendants' Motion to Strike, and are explained *infra*. Defendants' Motion to Dismiss again challenges the sufficiency of Plaintiff's pleading to state an FMLA interference claim and a tort claim, and challenges for the first time Plaintiff's FMLA retaliation claim.

## MOTION TO STRIKE

When Plaintiff moved to amend the original Complaint, she proposed to cure the pleading deficiencies identified in her dismissed claims and to omit an FLSA class claim. *See supra* note 1. The pleading actually filed, however, mistakenly retained allegations regarding the class claim. *See* First Am. Compl. [Doc. No. 16], ¶¶ 1.1, 3.2-3.3, 4.43-4.49, 7.4-7.8. Within the time period for a responsive pleading, Plaintiff filed a notice purporting to dismiss this claim. The Court found the Notice of Dismissal [Doc. No. 17] was ineffectual to accomplish a voluntary dismissal under Fed. R. Civ. P. 41(a)(1), and authorized Plaintiff to file a second amended pleading to correct the error. *See* Order of Oct. 2, 2015 [Doc. No. 18]. In the amendment, Plaintiff omitted the class claim but made other changes to the First Amended Complaint. Defendants ask the Court to strike from the Second Amended Complaint new allegations added by Plaintiff (which are enumerated in the Motion to Strike at pages 5-7) that Defendants believe are significant and were unauthorized. In some

instances Plaintiff has added a word or phrase, but other changes involve new sentences or paragraphs.

As authority for the relief requested by the Motion to Strike, Defendants cite Rule 15(a)(2), Fed. R. Civ. P. This rule addresses amended pleadings and is pertinent only to the extent Plaintiff failed to comply with its terms. A district court's authority to strike parts of a pleading appears in Rule 12(f), which provides: "The court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent or scandalous matter." Defendants do not contend the portions of the Second Amended Complaint to which they object contain this type of matter. Therefore, the Court finds the Motion to Strike lacks merit.

Further, Rule 15(a)(2) directs district courts to "freely give leave [to amend] when justice so requires." Under this rule, "[r]efusing leave to amend is generally only justified upon a showing of undue delay, undue prejudice to the opposing party, bad faith or dilatory motive, failure to cure deficiencies by amendments previously allowed, or futility of amendment." *Bylin v. Billings*, 568 F.3d 1224, 1229 (10th Cir. 2009) (internal quotation omitted). The Court is not persuaded that Plaintiff should be precluded from adding allegations to her amended pleading at this early stage of the litigation. Defendants' Motion to Dismiss challenges the sufficiency of the Second Amended Complaint and seeks the dismissal of claims allegedly affected by the amendment. "The purpose of [Rule 15(a)(2)] is to provide litigants the maximum opportunity for each claim to be decided on its merits rather than on procedural niceties." *See Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1204

(10th Cir. 2006) (internal quotation omitted). Disregarding allegations that were timely made and may support a claim would elevate form over substance.

For these reasons, the Court finds that Defendants' Motion to Strike Portions of Plaintiff's Second Amended Complaint should be denied.

## MOTION TO DISMISS

The applicable standard of decision is stated in the Court's order granting Defendants' initial Rule 12(b)(6) motion, and will not be repeated. *See* Order of July 9, 2015 [Doc. No. 7], p.2. Similarly, the factual allegations underlying Plaintiff's claims are set forth in detail in that order and need not be recited here. *Id*. at pp.2-6. Briefly stated, Plaintiff was employed as a manager of subsidized-rent apartment complexes owned or managed by Defendants.[2] She was terminated May 12, 2014, upon returning to work from a leave of absence for stress-related medical problems triggered or exacerbated by difficulties she had experienced at work. The difficulties began April 30, 2014, when Plaintiff was assaulted by an angry female tenant who yelled profanities at Plaintiff and threw a can at Plaintiff's head; the tenant's adult son also yelled profanities at Plaintiff. The next day, the tenant and her son continued their intimidation of Plaintiff and verbally threatened her with physical violence. The following morning, the tenant approached Plaintiff in the parking lot using profanity and threats, followed Plaintiff to her office, tried to kick open the office door as Plaintiff was attempting to close it, and remained outside the office cursing and making threats after

---

[2] As required by Rule 12(b)(6), the factual allegations of the Second Amended Complaint are accepted as true and stated in the light most favorable to Plaintiff. *See Berneike v. CitiMortgage, Inc.*, 708 F.3d 1141, 1144 (10th Cir. 2013).

4

Plaintiff succeeded in locking the door. On both of these days, Plaintiff called for police assistance, and police officers responded to the calls but took no action other than cautioning the tenant. After police left the second day, the tenant and her son continued to threaten Plaintiff, including making a death threat verbally and by hand gestures outside the office window. During or after each incident, Plaintiff reported the situation by telephone to a supervisor or manager. On the third day (May 3), the tenant came to the office to pay rent, and Plaintiff was instructed to accept the payment.

Although Plaintiff reported to her superiors that she was afraid for her personal safety and was suffering emotionally, no action was taken on Plaintiff's request for eviction of the tenant, and no direct assistance was provided to Plaintiff for dealing with the situation. Defendants did not conduct an investigation or take any remedial measures. They did not engage private security services, which they had done in the past, nor did they reassign Plaintiff to another property. Plaintiff's work environment caused her to suffer emotional distress and to become physically ill.

The following Monday morning (May 5), Plaintiff experienced a headache, ringing in her ears, dizziness, and blurred vision at work, and called a supervisor to request immediate leave to seek medical treatment. This request was denied, but later the same day, two supervisors visited the property and granted a second request by Plaintiff to leave work to obtain treatment. Plaintiff went to a hospital emergency room but left after a long wait without treatment. She visited another emergency room the next morning because she continued to experience the same symptoms. Plaintiff received treatment May 6 and was

hospitalized. She was released from the hospital May 7 with instructions not to return to work until May 12. Plaintiff advised her employer of the need for a leave of absence from work, and was instructed to appear at the corporate office with a doctor's note on May 12. Plaintiff complied and was terminated on that date.

As pertinent to Defendants' Motion to Dismiss, Plaintiff asserts in Count I of the Second Amended Complaint two claims under FMLA: 1) Defendants interfered with her exercise or attempted exercise of a right to medical leave for a serious health condition, in violation of 29 U.S.C. § 2615(a)(1); and 2) Defendants retaliated against her for exercising her leave right in violation of 29 U.S.C. § 2615(a)(2). In Count II, Plaintiff asserts a claim for intentional infliction of emotional distress based on allegations that Defendants' actions and omissions with regard to the conduct of the tenant and her son were outrageous and caused Plaintiff severe emotional distress. The Court previously found that the factual allegations of the Complaint were insufficient to state a plausible claim of either FMLA interference or intentional tort. By their Motion to Dismiss, Defendants contend that Plaintiff has failed to cure the deficiencies in her initial pleading, despite the additional allegations of the Second Amended Complaint. They also make a new assertion that Plaintiff's pleading fails to state a plausible FMLA retaliation claim.

**A.     FMLA Interference Claim**

The law governing Plaintiff's claim that Defendants interfered with her exercise of FMLA rights is well-settled.

> To establish a claim of FMLA interference under § 2615(a)(1), an employee must show "(1) that she was entitled to FMLA leave, (2) that some adverse action by the employer interfered with her right to take FMLA leave, and (3) that the employer's action was related to the exercise or attempted exercise of her FMLA rights." *Campbell*, 478 F.3d at 1287 (internal quotation marks and brackets omitted). To satisfy the second element of an interference claim – adverse action interfering with the right to take FMLA leave – "the employee must show that she was prevented from taking the full 12 weeks[] of leave guaranteed by the FMLA, denied reinstatement following leave, or denied initial permission to take leave." *Id*. Thus, an interference claim arises when an adverse employment decision is made before the employee has been allowed to take FMLA leave or while the employee is still on FMLA leave. *Id*.

*Dalpiaz v. Carbon Cty.*, 760 F.3d 1126, 1132 (10th Cir. 2014) (footnote omitted) (quoting *Campbell v. Gambro Healthcare, Inc.*, 478 F.3d 1282, 1287 (10th Cir. 2007)). "The interference or entitlement theory is derived from the FMLA's creation of substantive rights. If an employer interferes with the FMLA-created right to medical leave . . . , a deprivation of this right is a violation regardless of the employer's intent." *Smith v. Diffee Ford-Lincoln-Mercury, Inc.*, 298 F.3d 955, 960 (10th Cir. 2002).

Defendants first assert that the Second Amended Complaint contains insufficient factual allegations to support the first element because Plaintiff does not allege that a "serious health condition," as defined by FMLA, existed when she initially requested leave to seek treatment. A "serious health condition" includes "an illness, injury, impairment, or physical condition that involves . . . inpatient care in a hospital . . . ." *See* 29 U.S.C. § 2611(11)(A). Because Plaintiff experienced an illness or condition that required inpatient treatment, the Court finds that a serious health condition is sufficiently alleged. Further, because Plaintiff began experiencing on May 5 the same symptoms that caused her to be hospitalized on

7

May 6, the Court finds that Plaintiff has sufficiently alleged she had a serious health condition on May 5, 2014. *See, e.g.*, *Caldwell v. Holland of Tex., Inc.*, 208 F.3d 671, 676 (8th Cir. 2000) (symptoms later diagnosed as constituting serious health condition may be protected by FMLA right to medical leave).

An employee's entitlement to FMLA-protected leave requires sufficient notice to the employer that the employee is claiming a right to medical leave. Plaintiff plainly alleges that she notified her supervisor she was experiencing physical symptoms at work that were severe enough to warrant immediate medical attention and she wanted to seek emergency treatment. These factual allegations are sufficient to put the employer on notice of a request for medical leave under FMLA. *See Tate v. Farmland Indus., Inc.*, 268 F.3d 989, 997 (10th Cir. 2001) (FMLA does not require "a covered employee to specifically ask for FMLA benefits. An employee need not expressly assert rights under the FMLA or even mention the FMLA.") (citations omitted).

However, FMLA does permit "[a]n employer [to] require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave" and, absent unusual circumstances, where the employee fails to comply "FMLA-protected leave may be delayed or denied . . . ." *See* 29 C.F.R. § 825.302(d). Plaintiff has added to the Second Amended Complaint allegations stating that she complied with all policies and procedures of her employer regarding an unforeseeable request for medical leave. Defendants contend these conclusory allegations are insufficient to show Plaintiff satisfied her obligation to give adequate notice of a request for FMLA leave and, thus, to show her

8

entitlement to leave. Upon consideration, the Court finds that Plaintiff's allegations are minimally sufficient to show she was entitled to FMLA medical leave.

Defendants also assert Plaintiff does not sufficiently allege an adverse employment action that interfered with any FMLA right to medical leave. Defendants note that Plaintiff was allowed to leave work on May 5, the same day she asked to obtain medical treatment, and she remained off work until May 12, when her medical restriction was lifted. Plaintiff does not allege she requested additional leave prior to the termination of her employment or that she was denied medical leave for the time she was absent from work.

The only adverse action shown by the Second Amended Complaint is the denial of Plaintiff's first request to immediately leave work on May 5. Plaintiff claims: "By refusing Plaintiff leave to treat her serious health condition, Defendants have interfered, restrained and denied FMLA leave." *See* Second Am. Compl. [Doc. No. 22], ¶ 4.26. The Second Amended Complaint specifies that Defendants interfered Plaintiff's right to "FMLA qualified leave by denial of her first request," thereby delaying medical treatment, and that Defendants could not cure the FMLA violation "by later approving FMLA qualified leave to Plaintiff from multiple leave request(s)." *Id*. ¶ 5.6. In her brief, Plaintiff confirms her position that FMLA interference occurred when she was refused permission to leave work on the morning of May 5 to obtain treatment, and that delaying her absence until she made a second request in the afternoon is actionable because "Defendants did not have discretion to deny her leave for emergency treatment." *See* Pl.'s Resp. Br. [Doc. No. 26], pp.5,6-7. Thus, Plaintiff's FMLA interference theory is that the initial denial of a request to immediately leave work to seek

9

emergency medical care was an adverse employment decision related to her attempted exercise of FMLA rights.

Plaintiff provides no legal authority for this novel FMLA interference theory, and the Court has found none. Research has revealed cases in which an employee took immediate leave from work to attend an urgent medical need and the employee's absence from work was later found to be protected by FMLA, such as a diabetic taking a break to treat low blood sugar (*Sabbrese v. Lowe's Home Ctrs., Inc.*, 320 F. Supp. 2d 311, 322 (W.D. Pa. 2004); *Collins v. U.S. Playing Card, Co.*, 466 F. Supp. 2d 954, 965-66 (S.D. Ohio 2006)), or an employee with an abscessed tooth leaving work early to obtain emergency care (*Beekman v. Nestle Purina Petcare Co.*, 635 F. Supp. 2d 893, 900 (N.D. Iowa 2009)). The actionable interference by the employer in these cases, however, was a refusal to count the employee's absence as FMLA leave or an imposition of discipline for noncompliance with the employer's leave policy. *See Beekman*, 635 F. Supp. 2d at 911-12 (points assessed under attendance policy for FMLA-protected leave, leading to termination); *Sabrese*, 320 F. Supp. 2d at 330 (employee disciplined for FMLA leave); *Collins*, 466 F. Supp. 2d at 961 (same).

In this case, the hours-long delay on which Plaintiff relies to establish an FMLA violation had no alleged employment-related consequences. Although FMLA is a remedial statute, it "provides no relief unless the employee has been prejudiced by the violation." *See Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, (2002). FMLA provides only limited remedies. It authorizes compensatory damages for actual monetary losses and equitable relief; it does not permit recovery of consequential or emotional distress damages, or nominal

damages. *See Walker v. United Parcel Serv., Inc.*, 240 F.3d 1268, 1277 (10th Cir. 2001). Plaintiff does not allege she suffered any monetary loss or any employment action that caused a monetary loss. The Second Amended Complaint seeks no equitable relief on Plaintiff's FMLA claim. Therefore, the Court finds that Plaintiff has alleged no interference with an FMLA-created right for which relief can be granted and Plaintiff has no actionable claim under the alleged circumstances.

For these reasons, the Court finds that the Second Amended Complaint fails to state a plausible FMLA interference claim.

**B.     FMLA Retaliation Claim**

"Retaliation claims under the FMLA are subject to the burden-shifting analysis of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-04, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973)." *Metzler v. Fed. Home Loan Bank of Topeka*, 464 F.3d 1164, 1170 (10th Cir. 2006)). "To make out a prima facie retaliation claim, [a plaintiff] must show that: '(1) she engaged in a protected activity; (2) [the employer] took an action that a reasonable employee would have found materially adverse; and (3) there exists a causal connection between the protected activity and the adverse action.'" *Campbell*, 478 F.3d at 1287 (quoting *Metzler*, 464 F.3d at 1171). With regard to the third element, the Tenth Circuit "ha[s] repeatedly recognized temporal proximity between protected conduct and termination as relevant evidence of a

causal connection sufficient to justify an inference of retaliatory motive." *Metzler*, 464 F.3d at 1171 (10th Cir. 2006) (internal quotation omitted).[3]

Defendants assert that Plaintiff's pleading contains only a formulaic recitation of the elements of a retaliation claim that is insufficient under *Khalik v. United Airlines*, 671 F.3d 1188, 1192-93 (10th Cir. 2012). The Court disagrees. Accepting the factual allegations of the Second Amended Complaint as true and reading them in the light most favorable to Plaintiff, as required by Rule 12(b)(6), the Court finds sufficient facts to state a plausible claim that Plaintiff was terminated in retaliation for her exercise of an FMLA-protected right to take leave from work for a serious health condition.

## C.  Intentional Infliction of Emotional Distress

To prevail on a claim of intentional infliction of emotional distress under Oklahoma law, a plaintiff must show: "(1) the defendant acted intentionally or recklessly, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused the plaintiff emotional distress, and (4) the resulting emotional distress was severe." *See Computer Publ'ns, Inc. v. Welton*, 49 P.3d 732, 735 (Okla. 2002). To satisfy the second element, the defendant's conduct must be so extreme and outrageous as to be "beyond all possible bounds of decency" in the setting in which it occurred, or "utterly intolerable in a civilized community." *See Eddy v. Brown*, 715 P.2d 74, 77 (Okla. 1986); *see also Welton*,

---

[3] "While the 12(b)(6) standard does not require that Plaintiff establish a prima facie case in her complaint, the elements of each alleged cause of action help to determine whether Plaintiff has set forth a plausible claim." *Khalik v. United Airlines*, 671 F.3d 1188, 1191 (citing *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 515 (2002)).

12

49 P.3d at 735; *Kraszewski v. Baptist Medical Center of Okla., Inc.*, 916 P.2d 241, 248 (Okla. 1996). "In general, a plaintiff must prove that the recitation of defendant's conduct to an average member of the community would arouse the listener's resentment against the defendant and would lead the listener to exclaim 'Outrageous!'" *Welton*, 49 P.3d at 735.

The Court previously found the allegations of Plaintiff's Complaint that Defendants failed to make a timely and reasonable response to the verbal and physical assaults of Plaintiff by the tenant and her son, did not show conduct of Defendants that was sufficiently outrageous to hold them liable in tort. The Court relied, in part, on the holding of *Miner v. Mid-America Door Co.*, 68 P.3d 212, 224 (Okla. Civ. App. 2002), that no claim of outrage was presented under arguably analogous facts. Plaintiff has added no material factual allegations of substance to her pleading that would alter this finding.

Further, Defendants correctly assert in their present Motion to Dismiss that Plaintiff has failed to identify what any named defendant did or failed to do that could be considered outrageous. Upon consideration of allegations of the Second Amended Complaint, the Court agrees that Plaintiff has not stated sufficient facts to state a plausible intentional tort claim against any particular defendant.

Unlike Plaintiff's FMLA and FLSA claims, which permit liability of joint employers (*see* Order of July 9, 2015 [Doc. No. 7], pp.9-10,11-12), tort liability for intentional infliction of emotional distress requires the requisite level of conduct by the defendant. To establish egregious conduct, Plaintiff points to Defendants' collective failure to evict the tenant, to engage private security services, or to reassign her to a different apartment complex.

Plaintiff argues that "[h]er managers were only interested in collecting rent from the tenant, not [Plaintiff's] physical and emotional health." *See* Pl.s' Resp. Br. [Doc. No. 26], p.11. Plaintiff fails to allege any facts, however, from which a reasonable fact-finder could conclude that any defendant could or should have accomplished the desired changes within the 4- or 5-day period during which the threatening conduct allegedly occurred.[4] Defendants' collective failure during this time to assist Plaintiff in handling a stressful situation that she was forced to face alone, would not cause an average member of the community to find the conduct of any particular defendant to be extreme and outrageous.

Accepting the factual allegations of Plaintiff's pleading as true, it relates a brief period of time during Plaintiff's employment when employees or managers of one or more Defendants failed to assist Plaintiff in dealing with threatening behavior of a tenant and her son, and failed to respond to Plaintiff's complaints about fear for her personal safety. While the third-party behavior and the circumstances described in Plaintiff's pleading caused her emotional distress resulting in a hospitalization, the Court finds that the Second Amended Complaint fails to set forth conduct of any defendant – Eucalyptus Real Estate LLC; Dover Group, LLC; or Consolidated Capital Investments, LLC, or any agent or employee of any of these entities – that could reasonably be viewed as so extreme and outrageous as to be beyond all possible bounds of decency and utterly intolerable in a civilized community.

---

[4] Plaintiff makes no effective response to Defendants' argument that a landlord's ability to evict a tenant is constrained by procedural protections afforded by the Oklahoma Residential Landlord and Tenant Act, Okla. Stat. tit. 41, §§ 101-131. Plaintiff points to a footnote in the Second Amended Complaint stating that criminal activity may be grounds for immediate lease termination. This possibility is inconsistent with the alleged facts that police officers responded to Plaintiff's complaints about the tenant's behavior and neither made an arrest nor issued any citation.

"[A]llegations that simply name the 'Defendants' generically . . . are [not] helpful in figuring out what facts [Plaintiff] means to allege about [a particular defendant's] conduct." *Bryson v. Gonzales*, 534 F.3d 1282, 1290 (10th Cir. 2008) (emphasis omitted).

For these reasons, the Court finds that the Second Amended Complaint fails to state a plausible claim of intentional infliction of emotional distress.

## Conclusion

Assessing Plaintiff's pleading under the governing Rule 12(b)(6) standard, the Court finds the Second Amended Complaint fails to state a claim upon which relief can be granted under an FMLA interference theory or Oklahoma tort law, but it is minimally sufficient to state an FMLA retaliation claim.

IT IS THEREFORE ORDERED that Defendants' Motion to Strike Portions of Plaintiff's Second Amended Complaint [Doc. No. 23] is DENIED and Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint [Doc. No. 24] is GRANTED in part and DENIED in part. Having previously dismissed the claims with leave to amend, Plaintiff's claims of interference with FMLA rights and intentional infliction of emotional distress are now DISMISSED with prejudice. The case shall proceed on Plaintiff's FMLA retaliation and FLSA claims.

IT IS SO ORDERED this 19th day of May, 2016.

_____
TIMOTHY D. DeGIUSTI
UNITED STATES DISTRICT JUDGE